AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| SHELTON BURDIS HYMAN II and | )  Case No. |
| TYRONE LAMAR WILLIAMS a/k/a "BILLY," | )          19-6578-SNOW |
| | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____October 16, 2019,_____ in the county of _____Broward_____ in the
_____Southern_____ District of _____Florida_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and 18 U.S.C. § 2 |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

James Brian Whitworth, Special Agent, DEA
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/4/19

_____
*Judge's signature*

City and state:       Fort Lauderdale, Florida

Lurana S. Snow, United States Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

Your affiant, J. Brian Whitworth, being duly sworn, deposes and states as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Drug Enforcement Administration ("DEA") and have served in this capacity since March 2012.  Currently, I am assigned to Enforcement Group 6 in the Miami Field Division.[1]   As a DEA Special Agent, I have participated in the execution of numerous search and seizure warrants, resulting in the seizure of illegal controlled substances, packaging materials, firearms, and other tools of the drug trade.   I also participated in debriefings of narcotic traffickers, cooperating individuals, and sources of information.   Through these debriefings, I have become familiar with the terminology, code words, and brand names used by drug dealers.   In addition, I have testified before grand juries on a number of occasions, resulting in federal indictments.   I also have experience assisting an investigation that involved money laundering, and international drug trafficking and conspiracy.

2.      I previously completed a sixteen-week DEA Basic Agent training program at the DEA Training Academy in Quantico, Virginia, where I received detailed training, both academic and practical application, in the areas of informant handling/debriefing, interview and interrogation techniques, undercover techniques, and the method used by drug traffickers pertaining to the packaging, pricing, importation, and trafficking of controlled substances.   In addition, I received academic and practical application training in surveillance and counter surveillance techniques/methods.   I also received legal instruction on the Controlled Substances Act, federal drug conspiracy law, Federal Rules of Evidence, Fourth Amendment searches and seizures, the

---

1  Prior to this assignment, I was an officer/detective with the Charlotte-Mecklenburg Police Department in Charlotte, North Carolina, for over twelve and half (12.5) years.

1

execution of search warrants, and drafting affidavits.   Through my training and experience, I am familiar with the actions, traits, habits, and terminology utilized by drug traffickers, as well as the manner in which they conduct their business, including methods of importing and distributing narcotics, money laundering, the use of cellular telephones and the Internet to facilitate their illegal acts, and the use of numerical codes and code words to conduct drug transactions.

3.      As a law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), I am empowered by law to conduct investigations of and make arrests for, but not limited to, offenses enumerated in Titles 18, 21, and 46 of the United States Code.

4.      I make this Affidavit in support of a criminal complaint charging **Shelton Burdis Hyman II** and **Tyrone Lamar Williams a/k/a "Billy"** with one count of possessing with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.   Pursuant to Title 21, United States Code, Section 841(b)(1)(A), it is further alleged that the conduct involved fifty (50) grams or more of methamphetamine.

5.      I submit this Affidavit based on my personal knowledge, as well as information provided to me by other individuals, including other law enforcement officials, and my review of records and other evidence obtained during the course of this investigation.   Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, it does not include every fact known to me about this matter.

## PROBABLE CAUSE

6.   '   In or around October 2019, Shelton Burdis Hyman ("Hyman") advised a confidential source ("CS") that he could broker a deal for crystal methamphetamine between the

CS and "Billy" – a distributor of methamphetamine out of Coleman, Florida. During this time, the CS introduced a law enforcement officer acting in an undercover capacity ("UC") to Hyman and Williams for the purpose of purchasing methamphetamine.

7.      On or about October 16, 2019, at law enforcement's direction, the CS made contact with Hyman, who advised that his source of supply ("Billy") had not yet arrived. First, Hyman directed the CS to meet him at a café in Wilton Manors, Florida, which is in the Southern District of Florida. In response, the CS and the UC arrived at the café. The UC sent a text message to Hyman, advising that he and the CS parked their vehicle at the designated location. Hyman responded that "Billy" had not yet arrived. Approximately twenty (20) minutes later, Hyman directed the UC to come to his residence in Wilton Manors in order to conduct the transaction. Approximately ten (10) minutes later, the UC and CS arrived at Hyman's residence. Shortly thereafter, a black Ford Edge arrived at the residence with two black males wearing white tank tops. One of the black males – later identified as Williams – exited the Ford Edge with a black backpack over his shoulder and entered the UC's vehicle. Hyman also entered the UC's vehicle. While inside the UC's vehicle, Hyman directed the UC to provide three thousand two hundred dollars ($3,200.00) in United States currency to Williams.[2] The UC subsequently received approximately nine (9) ounces of methamphetamine. While Hyman was exiting the vehicle, the UC provided him with four hundred dollars ($400.00) in United States currency.[3] Hyman subsequently took one of the nine ounces for himself, leaving the UC with eight (8) ounces. UC paid three thousand six hundred dollars ($3,600.00) in United States currency to Williams and Hyman in exchange for the methamphetamine. Law enforcement submitted the seized

---

2  The $3,200.00 was official authorized funds ("OAF").
3  The $400.00 was official authorized funds ("OAF").

methamphetamine to a laboratory for analysis, which confirmed that there was approximately one hundred seventy-eight and a half (178.5) grams of crystal methamphetamine.

8.      On or about October 18, 2019, Hyman contacted the CS and advised that he had four (4) ounces of methamphetamine for sale.   At law enforcement's direction, the CS directed Hyman to contact the UC.   Hyman contacted the UC and agreed to sell the four (4) ounces of methamphetamine to him in exchange for two thousand dollars ($2,000.00) in United States currency.[4]   They agreed to conduct the transaction on October 22, 2019.   However, on or about October 21, 2019, Hyman contacted the CS and advised that he only had two (2) ounces of methamphetamine left but would sell it to the UC.

9.      On or about October 22, 2019, the UC met with Hyman in Wilton Manors, Florida, in order to purchase approximately two (2) ounces of crystal methamphetamine.   Once the UC arrived at the designated location, Hyman entered the UC's vehicle from the front passenger-side door.   While inside the vehicle, the UC paid one thousand dollars ($1,000.00) in United States currency[5] to Hyman in exchange for the crystal methamphetamine.   Law enforcement sent the submitted the methamphetamine for a laboratory analysis, which confirmed that there was approximately forty-six (46) grams of crystal methamphetamine.

10.      On or about December 1, 2019, the UC made contact with Hyman and ordered two (2) pounds of methamphetamine from Williams.   Hyman stated that the requested two (2) pounds of methamphetamine would cost twelve thousand six hundred ninety dollars ($12,690.00) in United States currency.   Hyman also told the UC that Williams would travel down to Wilton Manors, Florida – located in the Southern District of Florida – on Monday, December 2, 2019.

---

4 The $2,000.00 was official authorized funds ("OAF").
5 The $1,000.00 was official authorized funds ("OAF").

Therefore, the UC could meet with Williams the next day.

11.     On or about December 3, 2019, at approximately 1:11 p.m., the UC drove to Hyman's residence in Fort Lauderdale, Florida.[6]   Around the time of the UC's arrival, Hyman and Williams exited the same apartment unit.   Once the UC pulled into the driveway, both Hyman and Williams entered the backseat of the UC's vehicle with Hyman sitting directly behind the UC and Williams sitting beside Hyman.   Williams provided a substance believed to be methamphetamine to the UC.   The UC subsequently weighed the substance and found it to be less than the agreed-upon two (2) pounds (see Paragraph 10).   Hyman then returned to his apartment and upon returning to the UC's vehicle, he provided the UC with an additional ounce of a substance believed to be methamphetamine.   Shortly thereafter, law enforcement arrested both Hyman and Williams while inside the UC's vehicle.   At the time of Williams' arrest, he advised law enforcement that he was armed.   Law enforcement subsequently seized a fanny-pack from Williams' person and upon inspecting the bag, found a 9mm Taurus firearm.

12.     Law enforcement *Mirandized* both Hyman and Williams separately.   Both Hyman and Williams waived their rights and agreed to speak with law enforcement.   During Hyman's post-*Miranda* interview, he admitted to obtaining the methamphetamine from "Billy" and admitted that he had additional methamphetamine at his residence, which he subsequently relinquished to law enforcement.   During Williams' post-*Miranda* interview, he advised that he obtained his methamphetamine from contacts in Central Florida who obtained it from a source in California. Williams also admitted that the firearm belonged to him and that he purchased it off the street.

---

6 Hyman advised that he was in the process of moving from his Wilton Manors residence to the Fort Lauderdale residence.

## CONCLUSION

13.    Based on my training and experience, and as further supported by the facts in this Affidavit, I respectfully submit that probable cause exists that on or about October 16, 2019, **Shelton Burdis Hyman II** and **Tyrone Lamar Williams a/k/a "Billy"** did possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.   Pursuant to Title 21, United States Code, Section 841(b)(1)(A), it is further alleged that the conduct involved fifty (50) grams or more of methamphetamine.

**FURTHER AFFIANT SAYETH NAUGHT.**

J. Brian Whitworth, Special Agent
DRUG ENFORCEMENT ADMINISTRATION

Sworn to and subscribed before
me this the ___4___ day of December, 2019.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

6

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: __19-6578-SNOW__

### BOND RECOMMENDATION

DEFENDANT: __TYRONE LAMAR WILLIAMS a/k/a "BILLY"__

__Pre-Trial Detention__

(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____

AUSA:  Ajay J. Alexander

Last Known Address: _____

_____

_____

What Facility: _____

_____

Agent(s):     __James Brian Whitworth (ATF)__

(FBI)  (SECRET SERVICE)  (DEA)  (IRS)  (ICE)  (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: __19-6578-SNOW__

### BOND RECOMMENDATION

DEFENDANT: SHELTON BURDIS HYMAN II

Pre-Trial Detention

(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____

AUSA: Ajay J. Alexander

Last Known Address: _____

What Facility: _____

Agent(s):   James Brian Whitworth (ATF)

(FBI)  (SECRET SERVICE)  (DEA)  (IRS)  (ICE)  (**OTHER**)